In the Matter of the Claim of GERTRUDE S. AHERN, Respondent, against SOUTH BUFFALO RAILWAY COMPANY, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Argued December 4, 1951; decided March 13, 1952.

*Albert R. Connelly, Hoyt A. Moore, Jack W. Robbins* and *Joseph W. Marlow* for appellant. I. Congress has pre-empted the entire field of liability in respect of injury to or the death of railroad employees while they are engaged in interstate commerce, and any action which interferes in that field must fail. (*New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147; *Erie R. R. Co.* v. *Winfield,* 244 U. S. 170; *United States* v. *South Buffalo R. Co.,* 69 F. Supp. 456, 333 U. S. 771; *Matter of Wright* v. *New York Central R. R. Co.,* 288 N. Y. 719; *Industrial Bd. of State of N. Y.* v. *New York Central R. R. Co.,* 317 U. S. 668; *Matter of Baird* v. *New York Central R. R. Co.,* 299 N. Y. 213.) II. The decision of the Appellate Division is in conflict with decisions of the Court of Appeals that jurisdiction over the subject matter of a claim which is subject to the paramount provisions of Federal law may not be conferred upon the Workmen's Compensation Board by waiver, consent or estoppel. (*Scott* v. *McNeal,* 154 U. S. 34; *Matter of City of Buffalo,* 139 N. Y. 422; *Matter of Doey* v. *Howland Co.,* 224 N. Y. 30, 248 U. S. 574; *Matter of Newham* v. *Chile Exploration Co.,* 232 N. Y. 37; *Matter of National Sur. Co.* [*Laughlin*], 283 N. Y. 68; *Matter of Sampson* v. *Cole,* 265 App. Div. 259.) III. Payment by the railway company of interlocutory awards did not, and constitutionally could not, constitute a waiver of its right to question the jurisdiction of the Workmen's Compensation Board over the subject matter of the claim. (*Fitzgerald* v. *Harbor Lighterage Co.,* 244 N. Y. 132; *Brassel* v. *Electric Welding Co.,* 239 N. Y. 78; *Matter of Kane* v. *Morse Dry Dock & Repair Co.,*

250 App. Div. 888, 277 N. Y. 533.) IV. The jurisdictional issue was adequately raised below. (*Matter of Newham* v. *Chile Exploration Co.*, 232 N. Y. 37.)

*Nathaniel L. Goldstein, Attorney-General* (*Daniel Polansky, Wendell P. Brown* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent. I. The record before the referee at the time of the rendition of the award was devoid of any proof establishing that either decedent or the employer was engaged in interstate commerce. (*Matter of McGuirk* v. *Harrington & Co.*, 262 App. Div. 980, 287 N. Y. 854; *Matter of Foerg* v. *Sackett & Wilhelms Corp.*, 249 App. Div. 900; *Matter of Mittiga* v. *United States Aluminum Co.*, 227 App. Div. 680; *Matter of Waterman* v. *Jamaica Hosp.*, 262 App. Div. 978; *Matter of Strand* v. *Harris Structural Steel Co.*, 234 App. Div. 341.) II. No substantial constitutional or Federal question is here involved. (*Matter of Yeannelis* v. *Menides*, 259 N. Y. 513; *Valley S. S. Co.* v. *Wattawa*, 244 U. S. 202; *Matter of Kane* v. *Morse Dry Dock & Repair Co.*, 250 App. Div. 888, 277 N. Y. 533; *Heagney* v. *Brooklyn Eastern Dist. Terminal*, 190 F. 2d 976.) III. The employer has waived its right to raise the issues of jurisdiction and interstate commerce. It is estopped from raising these questions because of gross laches and conduct prejudicial to decedent's widow. (*Heagney* v. *Brooklyn Eastern Dist. Terminal*, 190 F. 2d 976; *Matter of Haglund* v. *Morse Dry Dock & Repair Co.*, 255 App. Div. 895; *Matter of Kane* v. *Morse Dry Dock & Repair Co.*, 250 App. Div. 888, 277 N. Y. 533; *Fitzgerald* v. *Harbor Lighterage Co.*, 244 N. Y. 132; *Matter of Agne* v. *Morse Dry Dock & Repair Co.*, 255 App. Div. 897; *Holland* v. *Atlantic Stevedoring Co.*, 210 App. Div. 129, 239 N. Y. 605; *Matter of McEntee* v. *City of New York*, 207 App. Div. 878, 237 N. Y. 523; *Davis* v. *Wakelee*, 156 U. S. 680; *People* v. *Gowasky*, 244 N. Y. 451; *Vose* v. *Cockcroft*, 44 N. Y. 415; *Phyfe* v. *Eimer*, 45 N. Y. 102.)

CONWAY, J. This is an appeal by the self-insured employer from an order of the Appellate Division of the Supreme Court, Third Department, entered November 27, 1950, unanimously affirming a decision made by the Workmen's Compensation Board, pursuant to the provisions of the Workmen's Compensa-

tion Law, which denied the employer's application for a review or rehearing of a referee's decision allowing disability compensation to the widow of Thomas J. Ahern, the deceased employee, for a period up to and including the date of the employee's death. The case was continued for the preparation of a death claim by the widow of the decedent.

A motion for permission to appeal to this court was denied upon the ground that an appeal therefrom to this court lies as of right. (302 N. Y. 877.)

In January, 1945, Thomas J. Ahern, the decedent, who had been employed as a switchman by the South Buffalo Railway Company (hereinafter called the Railway Company) at Lackawanna, New York, where the employer had its principal place of business, filed a claim for disability compensation with the board. The claim was based upon a coronary occlusion which the decedent suffered on July 1, 1944. It was the decedent's claim that he was engaged in the regular course of his employment while attempting to throw a switch which had become stuck, and was compelled to use extra exertion which brought about the occlusion, with resultant disability. In its notice to the board dated February 1, 1945, the Railway Company controverted the claim on the grounds of accident and causal relation, expressly reserving the right to controvert the claim for such other reasons as might later appear. Several hearings were held between March and July, 1945.

An award of compensation was rendered in favor of the decedent in September, 1945, for disability compensation in respect of temporary total disability from July 1, 1944, to June 5, 1945. The case was continued for consideration of the extent and length of disability subsequent to June 5, 1945.

The employer paid this initial award in the sum of $1,353.33.

A second award was made in favor of the decedent on January 10, 1946, for the period from June 5, 1945, to January 8, 1946.

A third award was rendered on February 5, 1947, for the period from January 8, 1946, to February 4, 1947, and payments were directed to be continued by the employer.

The employer paid all of the awards and continued to pay compensation to December 20, 1948, in accordance with the order of the board.

The total amount of compensation paid by the employer to the decedent, for the four and one-half-year period amounted to the sum of $5,528.66.

On January 3, 1949, the decedent died as a result of his heart condition. On January 18, 1949, a hearing was held before the referee at which the decedent's widow was requested to file a death claim. At that hearing, the question of the widow's right to an award for disability compensation for the unpaid two-week period up to the time of decedent's death arose. It was at that hearing that the employer, for the first time, challenged the jurisdiction of the board and thus sought to controvert the disability claim. The employer sought to raise the same objection to any claim for death benefits. The referee then rendered the award now on appeal for disability compensation for the final two-week period preceding death, to which reference has been made.

Thereafter in February, 1949, the Railway Company filed with the board an application for review or rehearing of the decision and award of the referee on the ground that at the time of the accident the decedent was employed by the Railway Company in interstate commerce; that under these circumstances the case came within the provisions of the Federal Employers' Liability Act; and that, therefore, the board was without jurisdiction of the claim. The board denied that application.

On appeal the Appellate Division confirmed the board's determination.

On the oral argument before us counsel for the Railway Company stated that it is not seeking to recover the payments covering disability from July 1, 1944 (the date of the accident) until December 20, 1948 (the date of the last payment made), but that it is attacking the award of two weeks compensation ($56) made to the decedent's widow for the period from December 20, 1948, until the decedent's death. The Railway Company contends that the determinations of the board and the Appellate Division were improper and should be reversed and that the proceeding should be remanded to the board for submission of proof as to jurisdiction of the board over the subject matter of the proceeding.

It is well established that Congress, by enacting the Federal Employers' Liability Act, has pre-empted the entire field of

liability in respect of personal injuries to railroad employees whose duties " further " or " directly " or " closely  *   *   * affect " interstate commerce, and that no room exists for State regulation or action in that field. (Federal Employers' Liability Act, § 1; U. S. Code, tit. 45, § 51; *Matter of Baird* v. *New York Central R. R. Co.,* 299 N. Y. 213, 215–216; *New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147, 152, 153; *Matter of Wright* v. *New York Central R. R. Co.,* 288 N. Y. 719; *Erie R. R. Co.* v. *Winfield,* 244 U. S. 170, 172.)   This is true even as to injuries occurring without fault, as to which the Federal Employers' Liability Act provides no remedy.   (*New York Central R. R. Co.* v. *Winfield, supra.*)

In *Matter of Newham* v. *Chile Exploration Co.* (232 N. Y. 37, 42), and *Matter of Doey* v. *Howland Co.* (224 N. Y. 30), we have had occasion to consider the question of waiver of lack of jurisdiction of the board.

In the *Newham* case (*supra*) we held that the fact that an employer had agreed to bring before the appellate courts of this State solely the question of the claimant's employment did not operate as a waiver of his right to question the jurisdiction of the board thereafter; and in the *Doey* case (*supra*) we held that an employer, who had recognized the validity of a board award and made payments thereon, was not precluded from moving to vacate the award on the ground of lack of jurisdiction, where subsequent to the payments under such award the United States Supreme Court determined that the New York State Workmen's Compensation Law was void insofar as it applied to persons engaged in maritime work, such as the employee.   In this latter case we concluded that since the board lacked jurisdiction to render the award, any award in fact made by the board was a nullity and would be so treated at any time the parties saw fit to question it by either a direct or collateral attack.

The foregoing cases establish unequivocally that the State is powerless to invade the field of liability as to injuries to railroad employees engaged in interstate commerce.   There is another avenue of approach to the problem which bears exploration, however.

The Federal Employers' Liability Act (Act, § 5; U. S. Code, tit. 45, § 55), makes void any " contract, rule, regulation, or device whatsoever " to exempt a carrier from liability.   Notwith-

standing that provision, the right of the employee to dispose of a claim he may have against his employer by entering into a compromise of his dispute is a right of contract which Congress did not intend to impugn. The employee may adjust " his own affairs in his own way after a cause of action has arisen in his favor, so long as such adjustment is fair and violates neither public policy nor some proper and enforceable statutory provision." (*Anderson* v. *Oregon Short Line R. Co.*, 47 Utah 614, 620.) That section forbids only contracts before injury exempting the master from liability and has no application to a contract of settlement. (*Ballenger* v. *Southern Ry. Co.*, 106 S. C. 200, 203.) Thus, the Supreme Court of the United States has held that that provision does not operate to prevent an otherwise valid release of a claim by an individual engaged in interstate commerce since " a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility." (*Callen* v. *Pennsylvania R. Co.*, 332 U. S. 625, 631.) In the more recent case of *Boyd* v. *Grand Trunk W. R. Co.* (338 U. S. 263, 266), an agreement which sought to limit the venue of an action that might thereafter be brought by an employee under the Federal Employers' Liability Act was held invalid as contravening the act, but the court reaffirmed the ruling in the *Callen* case characterizing the agreement therein as a " full compromise enabling the parties to settle their dispute without litigation, which * * * did not contravene the Act ".

Prior to the decision in the *Callen* case (*supra*) we held in *Brassel* v. *Electric Welding Co.* (239 N. Y. 78), that where an employee engaged in maritime work had accepted a final award of the New York State Workmen's Compensation Board, his cause of action for damages growing out of the same injuries, though based upon maritime law, was extinguished. At page 80 we declared: " We think the acceptance of the payment has destroyed the right of action. The question is not whether the award has the effect of a binding adjudication. We may assume that it is void, and that, at least while unpaid, it might have been set aside or disregarded (*Matter of Doey* v. *Howland Co., Inc.*, 224 N. Y. 30). The question is whether a right of action has survived the collection of the award and the retention of the proceeds."

On the other hand, in *Larscy* v. *Hogan & Sons, Inc.* (239 N. Y. 298, 301–302), where an employee entered into an agreement with his employer, the employee to receive and the employer to pay, a sum which might be awarded the employee as compensation for injuries received in an accident while engaged in maritime work, and thereafter received part payment, although no award had been made by the board, but refused to receive the balance and commenced an action to recover damages for negligence, we held that " The agreement may have amounted to an accord but payment only would amount to a satisfaction. Until there were an accord and satisfaction of plaintiff's claim by full and complete payment, the plaintiff was not barred from maintaining his action for negligence." Of course, the cause of action for damages was held to be subject to a setoff to the extent of partial payment.

The *Brassel* and *Larscy* cases (*supra*), although decided in 1924 and 1925, represent the state of the law as it existed prior to 1922 when the injuries in those cases took place. At that time section 114 of the New York Workmen's Compensation Law declared that the act applied to persons engaged in intrastate commerce and interstate or foreign commerce only to the extent that their mutual connection with intrastate work was clearly separable from interstate or foreign commerce. In 1922 (L. 1922, ch. 615), section 114 of the Compensation Law was renumbered section 113 and the following addition was made by the Legislature: " awards according to the provisions of this chapter may be made by the board in respect of injuries subject to the admiralty or other federal laws in case the claimant, the employer and the insurance carrier waive their admiralty or interstate commerce rights and remedies, and the state insurance fund or other insurance carrier may assume liability for the payment of such awards under this chapter."

In 1926, in *Fitzgerald* v. *Harbor Lighterage Co.* (244 N. Y. 132, CARDOZO, J.), we considered, for the first time, the statutory addition to section 113. It is interesting to note that we have not had occasion to consider that addition since the *Fitzgerald* case. There the plaintiff was injured on a vessel while working as a stevedore in navigable waters. He filed a claim for compensation for the resultant disability. The employer submitted to the jurisdiction of the board. Two awards were made and

paid and the case was placed " on the final adjustment calendar ". Thereafter the plaintiff commenced a suit for damages. We discussed the *Brassel* and *Larscy* cases (*supra*) and made the following observation (pp. 135, 136) : " The decision in *Larscy* v. *Hogan & Sons, Inc.,* is decisive of the case at bar, unless an amendment of the statute, which took effect June 1, 1922 [the addition to § 113], after Larscy had been injured, has changed the previously existing rule. * * * *We find it unnecessary to determine whether waiver in accordance with this section would supersede the remedy in admiralty.* Construing our own statute, we hold that the waiver which it contemplates has never been announced." (Emphasis supplied.) In construing the amendment to section 113 we wrote at page 137 : " In the setting of the context, it imports a concurrent evidence of intention having the force of an agreement to forego one set of remedies and abide by another. Until that intention is announced by all who must participate, a waiver by any one of them is inchoate and revocable."

Here, it is clear, that we must construe the addition to section 113, in the words of Judge CARDOZO, " In the setting of the context," and it is equally clear that there is present in the facts already detailed " a concurrent evidence of intention having the force of an agreement to forego one set of remedies and abide by another ", and that such intention has been announced by all who must participate in such an agreement.

In the Report of the Joint Legislative Committee (N. Y. Legis. Doc., 1922, No. 55) which recommended the enactment of the above-quoted addition to the New York Workmen's Compensation Law, the following statement appears (p. 12) : "The proposed amendment will permit those who choose to elect to accept the provisions of our law to so elect, and the one to pay [and] the other to accept compensation thereunder."

In the light of the wording of the addition to section 113 providing for waiver and the statement of legislative intent above quoted, it cannot be urged that the statute was intended simply to codify the rule that only a final award of the board, made and paid, precludes an individual from asserting his Federal rights. If that were so, section 113 would be meaningless. It provides that if the parties waive their Federal rights **and** remedies the board may act. If the payment of a final

award be deemed the waiver, then there is nothing further for the board to do, and no reason for it to act. Obviously then, section 113 means to do more than codify the rule which is laid down in the early cases. To our mind, the language of the section and that of the legislative committee which recommended its enactment plainly indicates that is a *permissive* statute intended to empower the board to make awards of compensation if all of the parties elect to settle their dispute in that fashion, and forego their Federal rights and remedies. It is not to be imposed upon them in the absence of a joint waiver or agreement evidencing an intention to be bound by its terms. In thus construing that section, we have been guided by the familiar principle of our jurisprudence that the courts are reluctant, and it is only as a last resort, that they will strike down a solemn legislative enactment on the ground that it is unconstitutional. We believe that the interpretation above given to section 113 of our Workmen's Compensation Law, is clearly the proper interpretation, and that as so construed section 113 does not conflict with the fundamental law of the land.

There is nothing contained in the Constitution of the United States which prohibits, nor has the United States Supreme Court held, that, after an accident, all interested parties may not dispose of their controversy as they themselves see fit, provided that the means whereby such dispute is settled or adjusted does not violate public policy. If all of the parties agree that the employer and carrier will pay and the employee will accept compensation, in the amounts and manner provided by the workmen's compensation statute of a State, rather than resort to litigation and the State has permitted its compensation board to make awards under such circumstances, we can conceive of no valid objection to such an arrangement. If the parties agree on a sum of money to be paid in discharge of the claim for personal injuries, such agreement, if there has been no overreaching or fraud, does not violate any constitutional provision, Federal legislation or announced public policy. Neither is there any sound reason why the parties may not designate an impartial third person or group of persons to determine the amount to be paid in extinguishment of the claim. To our mind that is all that section 113 of the Workmen's Compensation Law purports to accomplish.

Clearly the State of New York cannot circumvent by statute the ruling that Congress has pre-empted the entire field of liability in respect of personal injuries to persons engaged in interstate commerce and no room exists for State regulation in that field. (*New York Central R. R. Co.* v. *Winfield*, 244 U. S. 147, *supra*.) Thus if the Legislature were to declare arbitrarily that certain conduct constitutes a waiver or agreement to forego Federal rights and remedies where, as a matter of fact such conduct does not evidence a compromise agreement, the statute would be violative of the Federal Constitution. In *Erie R. R. Co.* v. *Winfield* (244 U. S. 170, *supra*), the United States Supreme Court construed such a statute. In that case the claimant, employed by a railroad engaged in both interstate and intrastate commerce, was struck by an engine and received injuries from which he died. No causal negligence was alleged or proved and both parties assumed there was none. The Trial Judge held that the employee was not employed in interstate commerce at the time of the accident and that compensation should be made to the widow under the State (New Jersey) statute. A judgment in her favor was entered, but reversed by the Supreme Court of the State on the ground that the employee was engaged in interstate commerce at the time of the accident and that the case was controlled by the Federal Employers' Liability Act. That judgment was in turn reversed by the Court of Errors and Appeals on the ground that the Federal act was inapplicable in the absence of causal negligence. The United States Supreme Court declared that three questions were presented for decision: (1) whether the Federal act was regulative of the carrier's liability even where no negligence is shown, (2) whether the facts established that the deceased was engaged in interstate commerce at the time of the accident, and (3) "whether by reason of the state statute the carrier became bound contractually to make compensation in this instance, even though it came within the federal act." (P. 172.)

The court answered the first two questions in the affirmative. In determining the third question the court pointed out that the New Jersey statute in question consisted of two parts. One part dealt with liability founded upon negligence and the other liability in the absence of negligence if the injury to the employee was an incident of the service in which he was

employed. The latter part was described as " elective " and not to be applied unless the employer and employee, expressly or impliedly, agreed to be bound thereby and surrender their rights to any other form of compensation.

With respect to the means by which such agreement was to be manifested the statute provided that every contract of hiring " shall be *presumed* to have been made " with reference to that part of the statute and unless the contract or a notice from one party to the other contain " an express statement in writing " to the contrary, it " shall be *presumed* " that the parties " have agreed to be bound " by that part of the statute. (Emphasis supplied.) The court stated at pages 173–174: " There was no *express* agreement in this instance and there is no basis for regarding the carrier as in any way bound by this part of the statute, save as it provides that an agreement to be bound by it shall be presumed in the absence of a declaration to the contrary. But such a presumption cannot be indulged here * * *." (Emphasis supplied.) The court held that it was beyond the power of a State to interfere with the operation of the Federal Employers' Liability Act " by putting the carriers and their employees to an election between its provisions and those of a state statute or by imputing such an election to them by means of a statutory *presumption.*" (Emphasis supplied.)

It will be seen that the court did not declare that it is beyond the power of a State to enact a statute conferring upon the employer, employee and insurance carrier the privilege of compromising their dispute by submitting it to the board. Moreover, the language of the Supreme Court in the *Erie* case (*supra*) above quoted, indicates that the court would have reached a different result had the parties *actually agreed* to forego their Federal rights and remedies.

Section 113 of the New York Workmen's Compensation Law, unlike the New Jersey statute, does not require the parties to choose between the Federal act and the State Workmen's Compensation Law, nor does it impute such an election to them by means of a presumption as did the New Jersey statute. Section 113 merely offers the parties a means whereby they may compromise their dispute, if they are *mutually desirous* of so doing.

No constitutional provision, Federal statute or Federal court holding has been called to our attention, which prohibits a State Legislature from giving effect to the lawful words and/or acts of the parties. The Legislature of the State of New York has said, through section 113 of the Workmen's Compensation Law, that when the words and/or acts of the parties clearly establish that the parties desire to have the State Compensation Board award compensation rather than be compelled to litigate their differences, the board may award compensation. We do not think that any fault may be found with such a statute.

The United States Court of Appeals for the Second Circuit has recently considered, in the case of *Heagney* v. *Brooklyn Eastern Dist. Terminal* (190 F. 2d 976, certiorari denied 342 U. S. 920), section 113 of our Compensation Law, and the conclusion of that court that the section is valid and that the agreement of the parties to abide by the awards of the State board, plus payment of a substantial number of such awards, constitute a release or compromise of the parties' rights under the Federal act, is in agreement with the position that we have outlined above.

In that case the plaintiff, a hostler working atop one of the defendant's locomotives, brought an action in a Federal District Court pursuant to the provisions of the Federal Employers' Liability Act, to recover damages for injuries sustained when he slipped on some grease and fell to the ground. Two years prior to the commencement of the suit the plaintiff had signed a statement for the employer describing the accident and said: " I have no intention of suing my employer but going to take voluntary compensation." The employer began to pay compensation on February 17, 1947, at the maximum rate allowed by New York law. Thereafter, a clerk of the New York State Workmen's Compensation Board informed the defendant that a hearing was to be held, the purpose of which was " Question of Jurisdiction." At the hearing the defendant's representative declared that it was waiving the question of jurisdiction and paying compensation. The referee then prepared a record entitled " Notice of Decision and Award ". Under the section designated " Decision " the record stated: " Accident, notice, causal relation established. Case continued." Several hearings were held thereafter and compensation pay-

ments were continued. On January 6, 1949, almost two years after the accident, the plaintiff notified the defendant that he was " making claim under the federal law and had the case closed ' without prejudice ' before the Board " (p. 977). The employer asserted its willingness to make further compensation payments in accordance with the order of the State board. As a defense to the claim for damages the employer pleaded waiver under section 113 of the New York Compensation Law. The employer then moved for summary judgment dismissing plaintiff's action on the ground that he had waived Federal remedies by the acceptance of awards of the board. The United States District Court for the Eastern District of New York granted the motion and dismissed the complaint. The United States Court of Appeals for the Second Circuit affirmed, holding that the employee had waived, under the provisions of section 113 of the New York Workmen's Compensation Law, his Federal rights and remedies, and that section 113 was valid and binding upon the employee.

It is to be noted that in that case the employee expressly declared that he had no intention of suing his employer but wished to receive voluntary compensation. The employer, in turn, expressly declared that it was waiving the " Question of Jurisdiction." The parties submitted to the jurisdiction of the board and pursuant to the direction of that board the employer tendered and the employee accepted a number of interlocutory awards.

It was the employee's contention that " waiver is insufficient; there must be an ' accord and satisfaction,' meaning thereby a ' final award ' by the Board duly paid and accepted." (P. 978.)

The United States Court of Appeals concluded, to use the words of Judge FRANK who dissented, that " His [plaintiff's] agreement, plus payment by defendant of a substantial portion of those partial awards, constituted a release or ' full compromise ' of whatever he might otherwise have recovered by suit under the federal statutes, and thus constituted a complete defense to plaintiff's present suit." (P. 980.)

Several of the statements of the majority of the court bear repetition here. At page 978 it was said: " When counsel came into the case and conducted its prosecution over many

months, with obvious success signalized by increased or additional awards, only to raise this issue at a late date when the end of state compensation was apparently approaching, there should no longer be any possible doubt as to the waiver.'' The court continued: '' Hence there was no genuine issue as to the fact of waiver, and the only question which remains is as to its validity.''

The court then considered the employee's claim that '' waiver is insufficient '', and that '' there must be an ' accord and satisfaction ' ''. In discussing that question the court recognized the general rule that a claim is not discharged until the accord executory or agreement is satisfied or performed but pointed out that the phrase '' executory accord '' is a confusing one, and that the test to be applied in determining whether the parties have given up their Federal rights is as follows: '' What we must look for, therefore, is a fair compromise whereby the parties settle their dispute in substitution for the litigation permitted by the Federal Acts; there is no mystic significance to be accorded a ' satisfaction ' upon some assumed ' final award.' When a state procedure accomplishes just that by agreement of all concerned, it should therefore be at least as valid as a formal release secured on payment of a few hundred dollars. And certainly no invidious distinction should be made so that only a purely temporary injury can be settled in this way, and that any permanent injury is excluded from settlement just because the state process requires continuing payments for the good of the injured employee.'' (P. 979.)

In the *Heagney* case (*supra*), the employee — the one seeking to escape from his declared intention and to question jurisdiction of the board — made his agreement in words. In the case now before us the employer which made its agreement by conduct rather than declared intention, must be held to be equally bound since in the law there is no distinction between agreements made by words and those made by conduct. There was an equal disclosure of intention to settle the dispute through the board '' in substitution for the litigation permitted by the Federal Acts ''. It is elementary that there can be no agreement unless all of the parties involved intended to enter into one. Moreover, it is well-established contract law that in determining whether the parties possessed the necessary intention to con-

tract, an objective test is generally to be applied. That means, simply, that the manifestation of a party's intention rather than the actual or real intention is ordinarily controlling. Thus, in *Hotchkiss* v. *National City Bank of New York* (200 F. 287, 293, L. HAND, J., affd. 201 F. 664, affd. *sub nom. National City Bank* v. *Hotchkiss*, 231 U. S. 50), it was said: "A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort." (See, also, *Amend* v. *Hurley*, 293 N. Y. 587, 596; *Porter* v. *Commercial Cas. Ins. Co.*, 292 N. Y. 176, 183–184.) An agreement by conduct does not differ from an express agreement, except in the manner by which its existence is established.

In the case now before us it is clear that there was no agreement between the parties when the initial hearings were held. At that time the employer had not agreed with the employee as to the amount the deceased was to receive, nor did it agree to have the board determine the sum to be paid. At the initial hearings held between March 6, 1945, and July 3, 1946, the employer indicated its unwillingness to have the board act by controverting the claim on the issues of accident and causal relation. Furthermore, we do not think that it may be said that the employee was then disposed to declare that, in filing a claim, he was prepared to abide by the ruling of the board, so as to be foreclosed from claiming his Federal rights should the board deny him compensation. However, it is clear that the conduct of the parties subsequent to the board's ruling on the questions of accident and causal relation and its decree that compensation be paid, establishes, as conclusively as the evidence in the *Heagney* case (*supra*), that it was the mutual desire of the parties that the board, acting as an impartial third person, should determine the amount to be paid in discharge of the claim by the deceased.

On the oral argument counsel for the employer asserted that its conduct in denying accident and causal relation on the initial hearings establishes that the payments of compensation made by the employer thereafter were involuntary payments, and that its acquiescence or submission to the determinations of the board should not be construed as a joint waiver or accord and satisfaction.

The employer, in thus arguing, overlooks the fact that its other conduct belies its protestations of lack of intent and does evince the intention to enter into a compromise whereby the dispute in question might be settled without litigation: *First:* No appeal was ever taken by the employer from any of the awards made except that herein which has to do with the award covering the last two weeks of the decedent's life, and *second:* From the outset the employer was represented by counsel and is chargeable with the knowledge that the board was powerless to require it to pay compensation unless it waived its Federal rights and remedies. The records in our court commencing with *Ives* v. *South Buffalo Ry. Co.* (201 N. Y. 271), and continuing through *Herke* v. *South Buffalo Ry. Co.* (227 N. Y. 618) and *Keogh* v. *South Buffalo Ry. Co.* (233 N. Y. 31) indicate clearly that the various counsel for the Railway Company, and thus the Railway Company, over the last forty years have been cognizant of the nature of its liability to its employees, and the remedies of the latter both under the Compensation Law and the Federal Employers' Liability Act. Nevertheless, the employer made payments for four and one-half years in accordance with the directions of the board, *choosing not to assert that the board lacked jurisdiction.* The payments of awards by and silence of the employer is significant in this case. An individual's silence may not be construed as the acceptance of an offer unless there is a duty to speak imposed on that person. However, we think that such a duty rested on the employer here. The Federal Employers' Liability Act (Act, § 6; U. S. Code, tit. 45, § 56) provides that no action may be maintained under its terms " unless commenced within three years from the day the cause of action accrued." The employer herein was aware that the employee desired to have the board determine the payments to be made in discharge of his claim rather

than resort to litigation, and with this knowledge it continued to make payments beyond the time when the Statute of Limitations had run on the plaintiff's claim for negligence under the Federal act — indeed, it has run as to the death claim, too. The employer cannot validly urge that it should be permitted to make payments beyond the period of the Statute of Limitations, thus leading the employee to believe that it was equally agreeable to the employer that the board act, without having its silence construed as an acceptance of the employee's offer to compromise the claim by having the amount of the claim fixed by the board. It may not be said that the employer would be estopped from asserting the Statute of Limitations on the ground that, by its conduct, it had misled the decedent and his widow to their detriment. The Federal and State courts have said that the Statute of Limitations in the Federal Employers' Liability Act is a limitation on the right and that if the action is not commenced in time, the right, not merely the remedy, is lost. (See, e.g., *American R. Co. of Porto Rico* v. *Coronas,* 230 F. 545, 546; *Taylor* v. *Southern Ry. Co.,* 6 F. Supp. 259, 260; *Bement* v. *Grand Rapids & Ind. Ry. Co.,* 194 Mich. 64, 66–68; *Gauthier* v. *Atchison T. & S. F. Ry. Co.,* 176 Wis. 245, 247–249.)

The employee's intention to thus settle the dispute is equally clear. The employee filed his claim for workmen's compensation six months after the accident. At the first hearing, held less than two months thereafter, he was represented by counsel. We must assume that at that time he was fully aware of any Federal rights that he might possess. Furthermore, he was bound to know, whether in fact he did know, that the New York Workmen's Compensation Board was powerless to award him compensation unless he waived his Federal rights and remedies. With this knowledge he was content to submit his claim to that board. At no time did the deceased indicate a desire to enforce his Federal rights. In the *Heagney* case (*supra*) it was said at page 978: " If there is ever to be any settlement of legal claims we feel that it must be in a case such as this where a claimant before an administrative board is adequately represented by counsel over a long period, during which the rights, potential and actual, of the client are perfectly obvi-

ous to anyone with the slightest legal training, and where there is no suggestion of fraud or concealment from the lawyer on the part of the employer."

That language is equally applicable here. When the acts of the decedent and the employer are viewed in the light of what reasonably intelligent persons would naturally have intended by them, we think the inference, fairly to be drawn, is that both the employer and employee intended that the board's determinations be taken " in substitution of the litigation permitted by the Federal Acts ". That being true, we can conceive of no sound reason why the employer should be permitted to urge his Federal rights at this late date.

The *Fitzgerald* case (*supra*) is not to the contrary. It is essential to note that in that case (1) the employee asserted his lack of intention of waiving his Federal rights, (2) the employer in its answer declared that in making payments it had acted under mistake of fact and law and asked for repayment, and (3) there was no evidence that the carrier supplied the moneys with which the provisional awards were paid. Certainly those being the facts it could not be held that all of the parties had waived or agreed to forego their Federal rights and remedies. Here (1) the employee has indicated his willingness to forego his Federal rights and remedies, (2) the employer has not asked for repayment of the awards on the ground that it acted under mistake of fact and law in paying them and there is no question about the agreement of an insurance carrier since the employer is self-insured.

The *Newham* and *Doey* cases (*supra*) decided prior to the enactment of the addition to section 113, which held that the lack of jurisdiction in the board had not been waived, are distinguishable. In neither of those cases could it be said that the facts established that the parties with full knowledge of their Federal rights jointly waived or agreed to relinquish them and resort to compensation as a substitute for litigation and since then the statute has been amended.

The order of the Appellate Division should be affirmed, with costs.

FULD, J. (dissenting). The self-insured employer herein, South Buffalo Railway Company, contests the jurisdiction of the Workmen's Compensation Board to make an award of compensation for the benefit of the injured employee, on the ground that at the time of the accident the employee was a railroad worker engaged in duties directly affecting interstate commerce, and that the exclusive remedy for any injuries sustained by him was an action under the Federal Employers' Liability Act (Act, § 1; U. S. Code, tit. 45, § 51). The employer was denied an opportunity before the Board to present evidence in support of its jurisdictional objection, and the issue on this appeal is the validity of that objection on the facts asserted by the employer.

If the Railway Company had challenged the jurisdiction of the Board prior to the making of any award, that challenge, it is indisputable, would have been sustained, since, on the facts posited, the Federal Employers' Liability Act provides the exclusive remedy. The Board's jurisdiction in this case is being upheld by this court solely because of the fact that three prior temporary awards of compensation were made by the Board and paid by the employer without any jurisdictional objection being raised and that the employer continued to make payments of compensation — without the compulsion of any award — at the rate previously awarded until shortly before the hearing at which the final award of disability compensation now challenged was made. The employee died about two weeks after the employer ceased making payments.[1]

On the strength of the employer's acquiescence in, and payment of, the three temporary awards, and its continuation of payments subsequent to the third temporary award, the Workmen's Compensation Board made a finding of fact that the employer had " waived " its jurisdictional objection and was further precluded from asserting such objection by reason of laches and estoppel. The Appellate Division similarly relied

1. This appeal does not involve any claim for death benefits, though I note that the employer did announce that it would contest the Board's jurisdiction to entertain such a claim if any were filed by the employee's widow. And I also note that the employer does not seek the return of any payments already made.

on the doctrines of waiver, laches and estoppel in affirming the Board's determination.

It is not entirely clear whether the decision of this court is predicated on the theory of waiver or on the view that the facts establish a binding executory accord between the parties. Whichever be the basis of the decision, I am constrained to dissent.

We all agree that Congress, by enacting the Federal Employers' Liability Act, pre-empted the field of liability for injuries to railroad employees whose duties are in furtherance of, or "directly" or "closely * * * affect" interstate commerce, to the exclusion of regulation by the states. (See *New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147, 152, 153; *Erie R. R. Co.* v. *Winfield,* 244 U. S. 170, 172; *Matter of Baird* v. *New York Central R. R. Co.,* 299 N. Y. 213, 215, 216; *Matter of Wright* v. *New York Central R. R. Co.,* 288 N. Y. 719, certiorari denied 317 U. S. 668.) If the duties of the injured employee in this case were in furtherance of interstate commerce or directly or closely affected it, then obviously the state agency had no jurisdiction of the subject matter of his claim. (See *Matter of Baird* v. *New York Central R. R. Co., supra,* 299 N. Y. 213, 216; *Matter of Newham* v. *Chile Exploration Co.,* 232 N. Y. 37, 42; *Matter of Doey* v. *Howland Co.,* 224 N. Y. 30, 38, certiorari denied 248 U. S. 574.)

We are all further agreed upon the fundamental principle that a determination made by a tribunal that is without jurisdiction of the subject matter is a nullity, and that the lack of jurisdiction cannot be waived or overcome by the consent or agreement of the parties. (See *Matter of Doey* v. *Howland Co., supra,* 224 N. Y. 30, 39; *Matter of Newham* v. *Chile Exploration Co., supra,* 232 N. Y. 37, 42; cf. *Mitchell* v. *Maurer,* 293 U. S. 237, 244; *United States* v. *Corrick,* 298 U. S. 435, 440.) In such circumstances, this court has held, "it is elementary that no agreement, waiver or stipulation could confer upon the state of New York or its courts or commissions, jurisdiction which it does not and cannot possess." (*Matter of Newham* v. *Chile Exploration Co., supra,* 232 N. Y. 37, 42.)

The court, however, reaches the result it does herein in reliance upon an amendment to section 113 of the Workmen's Compensation Law enacted in 1922, subsequent to the *Doey*

and *Newham* decisions (*supra*), authorizing awards to be made by the Workmen's Compensation Board of this state " in respect of injuries subject to the admiralty or other federal laws in case the claimant, the employer and the insurance carrier *waive* their admiralty or interstate commerce rights and remedies ". The constitutionality of this statutory provision has, strangely enough, never been passed upon by this court.

In *Fitzgerald* v. *Harbor Lighterage Co.* (244 N. Y. 132), the only case in which we have heretofore had occasion to consider the amended statute, we found it " unnecessary to determine whether waiver in accordance with this section [§ 113] would supersede the remedy in admirality ", since we concluded that the facts did not establish a " waiver " of the kind required by the statute (244 N. Y., p. 136).

Considered purely as a matter of " waiver ", I am unable to see how the mere declaration by the state legislature that the parties may " waive " the state's lack of jurisdiction of the subject matter, can have any added force, when the acts of the parties, relied upon as constituting the waiver, would, in the absence of the statutory declaration, be entirely ineffectual to confer jurisdiction. If the state is excluded from the particular sphere of action, it follows that the state is powerless by its own fiat to confer jurisdiction on itself or on its tribunals.

The parties may, of course, enter into a valid agreement for a release or a compromise or an accord and satisfaction of the employee's claims under the Federal Employers' Liability Act. The binding effect of such an agreement would ordinarily be determined by our local law of contracts. The state would undoubtedly have power to legislate with respect to the requisites and binding effect of such an agreement, as it has, for example, done in the case of executory accords generally (Personal Property Law, §§ 33-a, 33-b). It is, however, clear that the facts in this case do not suffice to establish either a release or a compromise or an accord or satisfaction effectual under our common law of contracts or under section 33-a of the Personal Property Law.

The court is apparently interpreting section 113 as giving binding effect, as an executory accord, to an express or even implied agreement by the parties to accept any award that

might thereafter be made by the state tribunal in lieu of a determination of the employee's claim in accordance with the federal statute. I cannot subscribe to such a strained reading of the language of that section, which speaks, and unequivocally, only in terms of " waiver ", and which, indeed, has already been construed by this court as a statute relating to " waiver ". (See *Fitzgerald* v. *Harbor Lighterage Co., supra,* 244 N. Y. 132, 136–137.) Moreover, the effect of such an interpretation is so far-reaching as to permit any express or implied agreement between the parties to submit to the jurisdiction of the Board to serve as a device for circumventing the jurisdictional limitations on the powers of the state and its tribunals.

If we put aside section 113, it is plain that under our settled course of decision nothing short of an actual accord and satisfaction, evidenced either by express agreement of the parties or by the payment by the employer or insurance carrier, and the acceptance by the employee, of a *final* award of the Workmen's Compensation Board would operate to extinguish the employee's claims under the federal statute and thereby supplant the federal remedy. (See, e.g., *Brassel* v. *Electric Welding Co.,* 239 N. Y. 78.) Thus, we have squarely held that the " acceptance of an award *not final* is at most an accord, and not a satisfaction, with the result that the cause of action for damages continues unextinguished, though subject to a set off to the extent of partial payments ". (*Fitzgerald* v. *Harbor Lighterage Co., supra,* 244 N. Y. 132, 135; see, also, *Larscy* v. *Hogan & Sons,* 239 N. Y. 298.)

Whether or not any special significance is to be assigned to section 113 in this regard, *Fitzgerald* v. *Harbor Lighterage Co.* (*supra,* 244 N. Y. 132) impresses me as decisive of the issue now presented. That case involved a stevedore who, injured while working on a vessel in navigable waters, filed a claim for disability compensation with the state compensation tribunal. Two awards were made and paid, covering a period of almost a year, and the case was then placed on the " final adjustment calendar ". Before a final award was made, the employee commenced a suit for damages under the federal act. The court, in an opinion written by Judge CARDOZO, held that, since no final award had been made, the acceptance of the temporary awards constituted " at most an accord, and

not a satisfaction," with the result that the employee's claim under the federal act was not extinguished as a matter of contract law, and that there was likewise no sufficient basis for a finding of a waiver within section 113, even if that section were valid.

Section 33-a of the Personal Property Law, enacted in 1937 (L. 1937, ch. 77), subsequent to the *Fitzgerald* decision (*supra*), gives effect to an executory accord " to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present claim, cause of action, contract, obligation, or lease, or any mortgage or other security interest in personal or real property," " *provided the promise of the party against whom it is sought to enforce the accord is in writing and signed by such party or by his agent.*" (Emphasis supplied.) Broad as its provisions are, however, that section is plainly not applicable in the present case, since there is no promise in writing signed by either of the parties involved, or by an agent, agreeing that payment of any award to be made by the Board shall be in satisfaction or discharge of the employee's claims under the federal act.

In enacting section 33-a, the legislature altered the law with respect to executory accords only to the extent that such an accord will be recognized as valid if embodied in a writing signed by the party against whom it is sought to be enforced, or his agent. Notwithstanding that explicit restriction, the court is apparently effecting an extension of the law beyond the limitations deliberately fixed by the legislature. If such a further change in the law is deemed desirable, the remedy lies with the legislature. Certainly, no basis is to be found in section 113 of the Workmen's Compensation Law for imputing to the legislature an intention to extend the pertinent rule in this regard in the field of compensation claims by employees subject to the Federal Employers' Liability Act.

Moreover, the court's decision seems necessarily to be grounded on an implied finding as to the existence of an agreement between the parties in the nature of a binding executory accord. Even assuming that the court has the power — which I very much doubt (cf. *Murray Co.* v. *Lidgerwood Mfg. Co.*, 241 N. Y. 455, 458; *Shohfi* v. *Shohfi*, 303 N. Y. 370; *Matter of McGrinder* v. *Sullivan*, 290 N. Y. 11; Cohen and Karger, Powers

of the New York Court of Appeals [1952], pp. 496–497) — to imply such a finding, when the Board, which alone has jurisdiction to pass upon any issues of fact in proceedings before it, did not make any such finding, but based its decision solely on a finding of waiver, laches and estoppel on the part of the employer, the decision in essence means that the almost invariable consequence of acceptance and payment of a temporary award is that the court will thereupon imply an agreement to supplant the federal with the state remedy. All the factors which are stressed in the majority opinion as predicates for implying such an agreement in this case are in essence to be found in almost any case in which one or more temporary awards of compensation have been paid and accepted. In other words, the mere fact that even one temporary award has been paid and accepted without protest is apparently now to be invested with the force of a binding commitment by the parties to submit themselves to the ægis of a tribunal completely without jurisdiction in contravention of the settled principle that neither waiver nor the consent or agreement of the parties can serve to confer jurisdiction where none exists.

I go further. Even if section 113 were to be given full effect in this case, the facts do not establish the requisite elements of the " waiver " envisaged by that section.

In *Fitzgerald* v. *Harbor Lighterage Co.* (*supra,* 244 N. Y. 132), as noted above, though the employee accepted payments under two temporary compensation awards covering a period of almost a year, and though no jurisdictional objection was voiced by any of the parties at the time of the making of such awards, this court held that section 113, even if valid, did not operate to extinguish the employee's right of action under the federal act, since " the waiver which it contemplates has never been announced." Thus, the court (per CARDOZO, J.), declared (pp. 136–137): " Claimant, employer and insurance carrier must unite in foregoing their admiralty remedies before the statute will be operative, if its validity be assumed. * * * We put aside the question whether waiver by the claimant within the meaning of this section is sufficiently established by the election to file a claim, unaccompanied by express disclaimer of admiralty remedies. Even if this be assumed, the defendant is not

helped unless employer and insurance carrier by some definitive expression have renounced *their* remedies as well. We see no basis for a finding that renunciation was effective when this action was begun. The employer had paid provisional or interlocutory awards for temporary disability. It may have been moved to this course by charity or by indifference or by dislike of litigation. Its acquiescence would not have barred it from appearing at the final hearing and contesting the claim for any sufficient cause including lack of jurisdiction. * * * In the setting of the context, it [§ 113] imports a concurrent evidence of intention having the force of an agreement to forego one set of remedies and abide by another. Until that intention is announced by all who must participate, a waiver by any one of them is inchoate and revocable.''

The mere payment and acceptance of temporary awards can no more be given the effect of a '' renunciation '' of the federal remedy herein, than they were in the *Fitzgerald* case (*supra*), notwithstanding the longer period covered by the payments in this case. The court's opinion in *Fitzgerald* cannot be read as assigning controlling importance to any one of the factors urged by Judge CONWAY (*supra,* pp. 553–554), and to distinguish that case on the grounds suggested is to ignore its basic rationale that the mere payment of temporary awards, amounting to '' acquiescence '', does not constitute a waiver or a renunciation by the employer of the right to challenge the unauthorized assumption of jurisdiction by the Board.

The order of the Appellate Division and the decision of the Workmen's Compensation Board should be reversed and the proceeding remitted to the Board for consideration of the objections raised by the employer to the Board's jurisdiction over the subject matter of this claim.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE and FROESSEL, JJ., concur with CONWAY, J.; FULD, J., dissents in opinion.

Order affirmed.