Nathaniel T. Helman, J.
In this special proceeding petitioners, the renting agent and owner of an apartment building, seek to annul and set aside an order of the respondent, New York City Commission on Human Eights, which, predicated upon a finding that petitioners engaged in unlawful racial discrimination in the rental of apartments, directed the landlord to lease an apartment to one Mrs. Bostic (hereinafter complainant) and directed the rental agent to supply respondent with daily listings of all apartments for which it is rental agent. Accordingly, two broad questions are raised: whether there is sufficient evidence in the record to support respondent’s finding of discrimination, and whether the respondent has authority, under the law, to issue orders of the sort attacked. An incidental question has also been raised as to the effect of respondent’s alleged noncompliance with provisions of the pertinent statute and of landlord’s rental of the apartment prior to issuance of the respondent’s order.
The scope of review in a proceeding such as this was recently delineated in Matter of River House in Riverdale Associates v. Booth (51 Misc 2d 403, 405-406), where the court stated:
"The pertinent statute is section Bl-9.0 of the Administrative Code of the City of New York (as amd. by Local Laws of City of N. Y., 1965, No. 97) which provides for judicial review of a determination of the City of New York Commission on Human Eights. That section provides in part that the commission’s *1040 findings as to the facts shall be conclusive if supported by sufficient’ evidence on the record considered as a whole. ’
“* * * ‘ A finding is supported by the evidence only when the evidence is so substantial that from it an inference of the fact found may be drawn reasonably. A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based. That requires “ such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” (Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197, 229.) ’ (Matter of Stork Rest. v. Boland, 282 N. Y. 256, 273-274.) ” (Emphasis added.)
A review of the record in the instant case indicates that here, as in River House, the evidence adduced in the record is insufficient to support respondent’s finding, and that that finding, as in River House, is predicated upon no more than a “ scintilla of evidence ”, upon which respondent has founded its suspicion. The facts are as amenable to a finding that the only discrimination exercised was against persons financially unable to maintain rental payments, instead of discrimination on a racial basis.-
While it is an unfortunate comment upon, the caliber of a portion of our society that a body such as respondent is necessary, it is clear that it exercises an important function. But it is just as objectionable to force a landlord to accept a tenant because she is of a minority group, where, on other grounds, she would be unacceptable, as it is to sanction the practice of discrimination. Unfettered discrimination is as abhorrent to our society as unfettered authority exercised in the name of prevention of discrimination. While our society owes recompense to those who have been discriminated against, it is neither required by decisional law nor statute that such persons be granted greater rights than their fellow citizens. This court: is not unaware of the fact that a contrary approach has been urged. It is equally aware, however, that such an approach has not been enacted into law; and the decision in this matter must be governed solely by the law, not by sociological theories. So, too, respondent’s authority is prescribed and circumscribed by law, and not by the sociological theories of its staff or members.
The apartment at issue rented for $192 per month. The complainant testified that she earned between $6,500 to $8,000 per year as a private-duty nurse. Her income tax statements showed earnings of $8,000 in 1962 and $6,500 in 1963. A credit report indicated complainant earned $4,500 per year. She also testified she had some other income. She stated she earned “ approximately $120, $100, sometimes more ” and that, on a *1041 per diem basis, she earned $23 per day (which, on a seven-day week basis, totals $161). It was also adduced that she owned a private home, on which she paid $163 per month on the mortgage and $100 per month “ easily” for other expenses. However, a $2,048.05 Federal tax lien existed on the property. She had no substantial bank accounts or other assets.
Complainant’s initial interview at the premises took place in the middle of July, 1965. She was then asked for a deposit of one month’s rent and a month’s rent as security. She did not have the money or a check with her, but testified that she returned with that money some time later (either five days or three and one-half weeks later). There was inconsistency in her testimony concerning a requested $25 “binder” to be deposited. It further appears that after her application was rejected, a conciliation conference was had in November, 1965, during which petitioners offered to accept complainant as a tenant if she would obtain a financially acceptable guarantor on the lease. Complainant stated she would provide a named doctor as such, upon which petitioners’ representative stated that the apartment would be held open for her, pending receipt of a credit report on the guarantor and the approval of the owner to the proposal. This approval was given. A guarantor was provided, not the named doctor, but a contractor, who was found unacceptable by petitioner, based on a credit report. The apartment was rented to another by lease dated March 7,1966. This was a day prior to issuance of a temporary injunction prohibiting the renting of the apartment concerned to anyone other than complainant. Prior thereto, on January 28,1966, a hearing was held before the respondent commission and, on April 4, 1966, the finding attacked was made.
In the pertinent portion of respondent’s findings, it is stated: “ The testimony in this case and the mounting circumstances would lead a rational person to conclude that the respondents did discriminate against the complainant herein * * * Mrs. Jessie Bostic was not accorded a fair and equal opportunity to rent the subject apartment. The evidence which was not disputed showed that there never was any intent on the part of the respondent to process the complainant’s application. When she first applied and filled out an application, no investigation was made of her employment nor were any persons contacted she had originally indicated would be able to furnish credit references. It was not until after she complained to the Commission was it revealed that her application had not been acted upon, and in fact the respondent claimed that it had been lost even though at the hearing it was marked into evidence as *1042 exhibit A ’. The respondent gave proof to the Commission that many persons who do not meet the requirement of having their weekly salary equal one month’s rent are accepted as tenants by the respondents, and they often make no credit investigation of the prospective tenant or the guarantor.” Examination of the record, however, fails to disclose any evidence substantial or sufficient to support these inferences. There was no proof that petitioners rented apartments to any family unit whose earnings were less in one week than complainant, where the monthly rental of the apartment equalled or exceeded that of the apartment concerned, save in one case where there was a guarantor on the lease. Further, there was proof of the obtaining of credit reports on several tenants, at least 11 in the case of applicants for the same type apartment; and, finally, the allegations of the “loss” of complainant’s application were contradicted and do not, by themselves, even if deemed true, constitute evidence of the practice of discrimination. Accordingly, as above noted, there appears to be insufficient evidence to warrant a finding of discrimination.
Based upon the above finding, there is no need to consider the effect of the alleged deviation from normal procedures by respondent, arising out of the conciliation conference preceding the hearing. Nor, therefore, is it necessary for this court to consider the constitutional arguments raised, and the jurisdictional question as to the commission’s power to issue the orders complained of, in view of the often stated rule that unless it is essential to the determination, such arguments should not be adjudicated (see Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. sub nom. South Buffalo Ry. Co. v. Ahern, 344 U. S. 367).
Accordingly the petition is granted and the order attacked annulled and vacated.